IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**RICHARD LEE MULLINAX,**

    **Plaintiff,**

v.                                              CASE NO. 5:12-cv-341-RS-CJK

**FRANK MCKEITHEN, individually and
in his official capacity as Sheriff of Bay
County, Florida, and DOUGLAS
SMITH, individually,**

    **Defendants.**
_____/

## ORDER

Before me are Defendants McKeithen and Smith's Motion for Summary Final Judgment (Doc. 57) and Plaintiff's Response and Memorandum in Opposition to Defendants McKeithen and Smith's Motion for Summary Judgment (Doc. 66).

### I. STANDARD OF REVIEW

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986). The moving party has the burden of showing the absence of a genuine issue as to

any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## II. BACKGROUND

I accept the facts in the light most favorable to Plaintiff. *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1343 n.1 (11th Cir. 2002)). " 'All reasonable doubts about the facts should be resolved in favor of the non-movant.' " *Id.* (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999); *Clemons v. Dougherty County*, 684 F.2d 1365, 1368-69 (11th Cir. 1982).

Plaintiff was arrested in June 2010 on various drug charges and was subsequently put on probation. (Doc. 1, ¶ 10). Plaintiff has many medical and mental conditions for which he takes medication including diabetes, high blood pressure, chronic back pain, and depression. He also has had multiple surgeries on his heart to insert a pacemaker and stents. One of these surgeries was in early February 2011. (Doc. 64-1, ¶ 2).

On February 22, 2011, Plaintiff was arrested again and charged with, among other things, violation of probation. (Doc. 1, ¶ 11). He remained in custody of the Bay County Jail until June 15, 2011, when he appeared before Judge James B. Fensom to enter a plea of no contest to the violation of probation charges. *Id.* As part of his plea agreement, Plaintiff was granted to a 60 day furlough before he was to serve his sentence of 18 months in prison. *Id.* at 13. If Plaintiff committed a crime while on furlough, his sentence would be increased to 36 months. *Id.* The court accepted the plea and agreement, but continued sentencing for 60 days. Plaintiff believes the furlough was for addressing his medical conditions and finalizing his affairs before reporting to prison. Although not written in his plea agreement, there is no disagreement that Plaintiff also agreed to be a confidential informant ("CI") during his furlough. This was arranged between Public Defender Boyette, Assistant State Attorney Ford, and Defendant Smith, but it was not

discussed with Judge Fensom during the hearing. Plaintiff was released from custody on June 15, 2011. (Doc. 57-3, p. 2).

On June 16, 2011, Plaintiff met with Defendant Smith as required by the agreement to discuss his duties as a CI. However, before the meeting Defendant Smith was informed by Captain Bell that she would not approve Plaintiff as a CI. Nothing resulted from this meeting. *Id.* at 4.

On June 17, 2011, Plaintiff sought medical treatment at Wewahitchka Medical Center because he felt like he was having a "nervous breakdown." (Doc. 1, ¶ 15). The medical professionals who examined Plaintiff suggest that he "Baker Act" himself and seek mental health counseling. He agreed and was then transferred by ambulance to Emerald Gulf Coast Behavioral Hospital. (Doc. 57-4, p. 2). En route to the behavioral hospital, Plaintiff's blood pressure dropped so much that he was taken to Bay Medical Hospital. *Id.* at 3. Dr. Jonathan Jones diagnosed Plaintiff as having an anxiety reaction. (Doc. 57-6, p. 4). Dr. Jones also determined that Plaintiff did not qualify for involuntary inpatient placement. (Doc. 57-7).

In the meantime, Gulf County Sheriff Joe Nugent became aware that Plaintiff was at the Wewahitchka Medical Center and was being Baker Acted. (Doc. 57-8, p. 3). Sheriff Nugent was under the false impression that Plaintiff had already been sentenced and wondered why he was out of jail. *Id.* Sheriff Nugent

contacted Defendant Bay County Sheriff Frank McKeithen about Plaintiff. *Id.* Sheriff McKeithen contacted Captain Bell, who advised him that Plaintiff was out on furlough. (Doc. 58-9, p. 3-4). Captain Bell also told Sheriff McKeithen that Plaintiff was not going to be used as a CI. Sheriff McKeithen called Judge Fensom to get Plaintiff's furlough revoked, but Judge Fensom referred him to the attorneys. *Id.* at 6-7. ASA Ford was contacted by either Sheriff McKeithen or Captain Bell about getting Plaintiff's furlough revoked since he wasn't going to be used as a CI. *Id.* at 10.

While Plaintiff was still at Bay Medical Center, Captain Bell instructed Defendant Smith to pick up Plaintiff. (Doc. 64-3, p. 14). When he was discharged, Defendant Smith told Plaintiff to come with him. (Doc. 64-2, p. 21). Although Defendant Smith did not tell Plaintiff that he was under arrest, did not handcuff Plaintiff, and put Plaintiff in the front seat of his unmarked vehicle to the Bay County Sheriff's Office ("BCSO"), Plaintiff believed he was under arrest because these were similar conditions to his previous arrests. (Doc. 64-1, p. 4-5). Plaintiff asked Defendant Smith if he was under arrest, but Defendant Smith did not answer. *Id.* At BCSO, Plaintiff was placed in a small room, which is used as both an interrogation and holding room, for three hours. (Doc. 64-2, p. 24). Plaintiff checked the door, and it was locked. He did not believe that he was free to leave. (Doc. 64-1, p. 5).

Sometime that afternoon ASA Ford filed an Emergency Motion to Revoke Furlough on the grounds that

> [T]he Defendant is a danger to himself and others. Additionally his request for pain medication indicates a potential drug abuse issue. At the current state, the Defendant is unable to comply with the terms of the plea agreement.

(Doc. 57-10).  Judge Fensom granted the motion.  (Doc. 57-11).  Plaintiff was then transferred to the Bay County Jail where he stayed until June 29, 2011.  Plaintiff spent twelve days in jail, and he contends that he was denied medical and health treatment.

The sentencing hearing took place on June 29, 2011, when Plaintiff learned of the reasons for the revocation of the furlough. Plaintiff contends that the reasons given for revocation were false.  ASA Ford and Plaintiff's attorneys had stipulated that the furlough was to allow Plaintiff

> 60 days to work with the Bay County Sheriff's office. He was going to work essentially, wear a wire, work on meth, and he was going to attempt to produce or deliver or provide information on some people that were hired up in the corporate system of the meth world….

(Doc. 57-13, p. 11).  Judge Fensom used the court's discretion to revoke the furlough as the reasons for it no longer existed, and Plaintiff was sentenced to serve an 18 month sentence.  *Id.* at 8.

### III. ANALYSIS

*Individual Defendants*

Qualified Immunity for Fourth Amendment Violation Claim

The individual Defendants Smith and McKeithen first argue that qualified immunity applies to the §1983 claim for an unreasonable seizure under the Fourth Amendment.  Qualified immunity is a shield against liability for government actors, prohibiting "civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008)(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity " 'allow[s] government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.' " *Beshers v. Harrison*, 495 F.3d 1260, 1265 (11th Cir. 2007) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).  "Qualified immunity is 'an *immunity from suit* rather than a mere defense to liability . . . .' " *Scott v. Harris*, 550 U.S. 372, 372 n.2 (2007) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Qualified immunity requires a three-step inquiry.  First, the defendant public official must prove that " 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.' " *Courson v. McMillan,* 939

F.2d 1479 (11th Cir. 1991)(quoting *Rich v. Dollar,* 841 F.2d 1558, 1563-64 (11th Cir. 1988)).  Once this is established, the burden shifts to the plaintiff, and the second question is "whether '[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show [that Defendants'] conduct violated a constitutional [or statutory] right?' If so, the [next] question is whether the right, be it constitutional or statutory, was clearly established." *Hadley v. Gutierrez*, 526 F.3d at 1329 (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001))(internal citations omitted).

It is undisputed that Defendants Smith and McKeithen were acting within their discretionary authority when the allegedly wrongful acts occurred. Therefore, I must determine whether the Defendants violated a clearly established constitutional right.

It is clearly established that the Fourth Amendment protects individuals from unreasonable searches and seizures, and an arrest without probable cause clearly violates this Fourth Amendment right.  *Durrithy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003)(citing *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998)).  The Eleventh Circuit has concluded that the standard for determining the existence of probable cause is whether " 'a reasonable man would have believed [probable cause existed] had he known all of the facts known by the officer.' " *Rankin v. Evans*, 133 F.3d 1425, 1433 (11th Cir. 1998)(quoting *United States v.*

*Ullrich*, 580 F.2d 765, 769 (5th Cir. 1978)).  Furthermore, "officers who make an arrest without probable cause are entitled to qualified immunity if there was arguable probable cause for the arrest." *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004)(citing *Jones v. Cannon,* 174 F.3d 1271, 1283 (11th Cir. 1999)).  Arguable probable cause exists if reasonable officers in the same circumstances and possessing the same knowledge as Defendant could have believed that probable cause existed to arrest Plaintiff.  *Id.*

Defendants first argue that Plaintiff was taken into custody pursuant to a facially valid court order, so there was no false imprisonment under Florida law and Plaintiff's Fourth Amendment rights were not violated. However, Plaintiff contends that the violation of his Fourth Amendment rights came when Defendant Smith picked him up at the hospital. Plaintiff was under the impression that he had been arrested at that time. Defendants contend that there is no evidence in the record to support Plaintiff's belief and that Plaintiff consented to the transport to BCSO.

There is no doubt that after Judge Fensom revoked Plaintiff's furlough that there was no violation of his Fourth Amendment rights.  However, Plaintiff was taken from the hospital to BCSO for approximately three hours before his furlough was revoked. The testimony about whether Plaintiff was placed under arrest at that time is contradictory, and therefore, creates a genuine issue of material fact.  *See*

*Marchman v. City of Clearwater*, 2006 WL 314511, at *6 (M.D. Fla. 2006)(genuine issues of material fact exist for constitutional false arrest cause of action where arresting officer's and plaintiff's versions of the events prior to and surrounding the arrest were in direct conflict).

Defendants further argue that if Defendant Smith did take Plaintiff into custody, he had arguable probable cause to do so because he knew that Plaintiff was not going to be used as a CI, and because of that, the furlough agreement was going to be revoked. However, probable cause "is a reasonable ground for belief of guilt." *Nolin v. Town of Springville, et al.*, 45 F.Supp.2d 894 (M.D. Ala. 1999). At this point, it is undisputed that Plaintiff had not committed any crime. Additionally, Judge Fensom was still unaware that Plaintiff's working as a CI was part of his plea agreement. It was classified as a medical furlough, and Plaintiff had legitimate medical needs. Just because Defendants knew that Plaintiff was not going to be used as a CI does mean that they had arguable probable cause to hold Plaintiff. Revoking Plaintiff's furlough was in the sole discretion of the judge—not the sheriff or officer. To hold Plaintiff in custody before his furlough was revoked was arguably an infringement of his Fourth Amendment right that must go to the jury.

Therefore, because there is a genuine issue as to whether Defendants violated Plaintiff's clearly established Fourth Amendment right from unreasonable seizure, Defendants Smith and McKeithen are not entitled to qualified immunity.

<u>Deliberate Indifference to a Serious Medical Need</u>

Plaintiff claims that Defendants violated his constitutional rights under the Due Process Clause of the Fourteenth Amendment. The Complaint states,

> Defendants acted with deliberate indifference as to Plaintiff's medical conditions when they caused the revocation of Plaintiff's medical furlough and withheld much needed medical care despite knowing that Plaintiff suffered from a medical condition.

(Doc. 1, ¶ 23). From the complaint, it seems clear that the deliberate indifference that Plaintiff refers to is the revocation of his furlough. The revocation took place before he was sent back to Bay County Jail, which means that the deliberate indifference of a serious medical need analysis does not apply because the individual has to be incarcerated. Therefore, this claim fails as it has been alleged. However, Plaintiff now argues that Defendants were deliberately indifferent to a serious medical need for the twelve days that he was incarcerated before his sentencing. Although this is not what Plaintiff pled, I will address it, and Plaintiff's claim still fails.

Deliberate indifference under the Fourteenth Amendment for pretrial detainees uses the same standard as for inmates under the Eighth Amendment. *Hamm v. DeKalb County*, 774 F.2d 1567, 1572 (11th Cir. 1985). "Plaintiff must sufficiently allege 'both an objectively serious medical need and that a Defendant acted with deliberate indifference to that need.'" *Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1234 (11th Cir. 2010)(quoting *Burnette v. Taylor*, 553 F.3d

1325, 1330 (11th Cir. 2008).  To establish deliberate indifference, "Plaintiff must demonstrate that Defendants (1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk; and (3) acted with more than gross negligence." *Id.* Plaintiff "must also show that those Defendants' conduct caused [his] injuries." *Id.*

The only evidence in the record about Defendants' alleged deliberate indifference is Plaintiff's testimony. He said he spent "six days in the butt-naked cell, suicidal. I went from okay to dying to, he's all right to suicidal, according to the Bay County Sheriff's Department, which is not doctors…" Assuming that Defendants knew there was a risk of serious harm, Plaintiff has failed to show how they disregarded that risk or acted with gross negligence.  The record is void of any evidence that Plaintiff suffered any harm at all while in jail besides feeling suicidal, which was not related to the reason he was on medical furlough—his heart. Additionally, he was discharged from Bay Medical Center for anxiety, so it would be reasonable for Defendants to assume that anxiety was no longer an issue. Therefore, Plaintiff has not sufficiently shown that Defendants acted with deliberate indifference to violate his Fourteenth Amendment due process rights.

## *Claims Against Sheriff in Official Capacity*

### Fourth Amendment Claim

Defendant McKeithen can be found liable under § 1983 if the violations of Plaintiff's constitutional rights were (1) the result of Defendant's policies or

customs, (2) if Defendant's final policymaker acted with deliberate indifference to a constitutional deprivation, (3) Defendant's policymaker delegated authority to a subordinate who caused a constitutional deprivation, or (4) Defendant's final policymaker ratified a constitutionally impermissible decision or recommendation of a subordinate employee.  *Sherrod v. Palm Beach County School Dist.*, 424 F.Supp.2d 1341, 1344 (S.D. Fla. 2006).

Plaintiff makes three arguments. First, Defendant McKeithen, in his official capacity, was the final policymaker and acted with deliberate indifference to a constitutional deprivation when he called the state court judge to have Plaintiff's furlough revoked.  Second, the alleged violation of Plaintiff's constitutional rights was the result of Defendant's policy, customs, or practice. Third, Defendant, as the final policymaker, ratified Defendants Smith's conduct of taking Plaintiff into custody and holding him in violation of the Fourth Amendment.

Plaintiff's first contention fails.  Even if Defendant McKeithen acted in a way that caused Plaintiff's furlough to be revoked, this is not a constitutional violation.  Section 914.28(8) of the Florida Statutes states, "The provisions of this section and policies and procedures adopted pursuant to this section *do not grant any right* or entitlement to a confidential informant or a person who is requested to be a confidential informant…."  (emphasis added).

Plaintiff's contention that Defendant failed to adequately train and supervise his employees, which led to the constitutional violation, also fails. To show § 1983 liability for a municipality, Plaintiff must show: (1) that his constitutional rights were violated, (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right, and (3) that the policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). The Eleventh Circuit had said, "Before such liability arises, however, the need for such training must be plainly obvious to Department decisionmakers." *Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir. 1990). The sheriff would need actual notice of unconstitutional practices to put him on notice for the need of improved training or supervision. *Id.* There is no evidence in the record that Defendant McKeithen was on notice of the need for improved training or supervision.

The municipality can also be liable under § 1983 for a single incident of unconstitutional activity when there is "the delegation of final policymaking authority from one official to another and the ratification of a subordinate's actions by a final policymaker." *Mandel v. Doe*, 888 F.2d 783, 791 (11th Cir. 1989); *see Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2005)("Thus, when a subordinate municipal official is alleged to have committed the constitutional violation, municipal liability turns on the plaintiffs' ability to attribute the subordinates' conduct to the actions or omissions of higher ranking

officials with policymaking authority. One means of doing so, of course, is to establish that a policymaker ordered or ratified the subordinates' actions.").

In this case, Plaintiff alleges that he was unreasonably seized in violation of the Fourth Amendment. As discussed above, there is a genuine issue of material as to whether there was a constitutional violation. Plaintiff further alleges that the municipality should be liable because Defendant McKeithen, as final policymaker, ratified this conduct. Defendant McKeithen knew that Plaintiff was being held at BCSO because he was actively trying to get Plaintiff's furlough revoked. Therefore, it is at least arguable based on the evidence that Defendant McKeithen was aware of and ratified the alleged unreasonable seizure of Plaintiff.

## Deliberate Indifference of a Serious Medical Need

As stated earlier, Plaintiff's claim that the revocation of Plaintiff's medical furlough was the deliberate indifference of a serious medical need fails because at the time of the revocation, he was not incarcerated. Further, the record is void of any evidence of medical care being withheld from Plaintiff while he was incarcerated. Therefore, summary judgment is granted as to this claim.

### *False Arrest*

Plaintiff brought two false arrest claims. Count III is against Defendant McKeithen in his official capacity, and Count IV is against the individual defendants, which is pled in the alternative. "False arrest" is defined as "the

unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty." *Escambia County Sch. Bd. v. Bragg*, 680 So. 2d 571, 572 (Fla. 1st DCA 1996). This is similar to the § 1983 claim for a violation of the Fourth Amendment. As with a § 1983 action, the existence of probable cause is an affirmative defense to a false arrest or imprisonment claim under Florida law. *Jackson v. Navarro*, 665 So. 2d 340, 342 (Fla. Dist. Ct. App. 1995). However, the party carrying burden of proof is different. "The only difference in the probable cause analysis applicable to the state and federal claims at issue here is which party carrie[s] the burden of proving whether probable cause existed." *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998). "Plaintiff has the burden of demonstrating the absence of probable cause to succeed on his section 1983 claim, while [Defendant] has the burden of demonstrating the existence of probable cause as a defense to the state law claim." *Russ v. GEO Group, Inc.*, 2012 WL 6634800, at *7 (N.D. Fla. Dec. 20, 2012).

As discussed above, from the time Plaintiff was picked up at Bay Medical Center to the time his furlough was revoked and he was brought to Bay County Jail, he believed he was under arrest and not free to leave. Defendant has not demonstrated that there was arguable probable cause to take Plaintiff into custody.

However, FLA. STAT. § 768.28(9)(a) states:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in a tort or named as a

> party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in such a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Plaintiff has not met this standard to hold the individual defendants liable because there is no evidence of bad faith, malice, or wanton and willful disregard of human rights in the record. Therefore, summary judgment is entered as to Count IV against the individual defendants, but Count III remains against Defendant McKeithen in his official capacity.

*Negligence*

Count V is for negligence against Defendant McKeithen in his official capacity. The complaint states that Defendant McKeithen "breached [his] duty of care to Plaintiff in that he was in a special relationship with [Defendant] and/or within the foreseeable zone of risk. [He] was … responsible for ensuring that [Plaintiff] timely received medical care and treatment but failed in that duty." (Doc. 1, ¶ 63). To state a claim for negligence under Florida law, a plaintiff must allege that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the breach caused the plaintiff to suffer damages. *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001). As stated earlier, Plaintiff has not shown any injury or damages from the alleged negligence. Therefore, summary judgment is granted as to Count V.

## IV. CONCLUSION

Defendant McKeithen and Smith's Motion for Summary Final Judgment (Doc. 57) is **GRANTED in part and DENIED in part**.  Summary judgment is granted for Counts I (deliberate indifference), IV (false arrest against the individual Defendants McKeithen and Smith), and V (negligence).  Counts II (§1983 Fourth Amendment violation) and III (false arrest against Defendant McKeithen in his official capacity) remain.

**ORDERED** on August 9, 2013.

        /S/ Richard Smoak
        **RICHARD SMOAK**
        **UNITED STATES DISTRICT JUDGE**